**Rochelle JENKINS, Appellant**

v.

**Robert WOLF, Appellee.**

Superior Court of Pennsylvania.

Submitted Feb. 13, 2006.

Filed Nov. 9, 2006.

Thomas M. Holland, Philadelphia, for appellant.

Kevin R. McNulty, Philadelphia, for appellee.

BEFORE: KLEIN, KELLY and POPOVICH, JJ.

OPINION BY KLEIN, J.:

¶ 1 Rochelle Jenkins appeals from the judgment entered on July 19, 2005 in the Court of Common Pleas of Philadelphia County.[1] Jenkins claims that the trial court erred in failing to instruct the jury regarding negligence *per se* when evidence was introduced that defendant Robert Wolf failed to yield to a pedestrian, in violation of 75 Pa.C.S.A. § 3112. We agree, and we therefore reverse and remand for a new trial.

¶ 2 On the morning of February 25, 2003, Jenkins attempted to cross Alleghe-ny Avenue at its intersection with Kensington Avenue when she was struck in the head by the passenger side view mirror of Wolf's Ford Explorer. At that time, Wolf was turning right onto Allegheny Avenue from Kensington Avenue. The impact knocked Jenkins to the ground and rendered her unconscious. Wolf's side view mirror was broken from its mounts. Jenkins received medical attention for her injuries.

¶ 3 On September 18, 2003, Jenkins filed a complaint in negligence seeking damages for injuries suffered in the accident. On January 24, 2005, a jury trial commenced. On January 26, 2005, the jury returned a verdict finding that Jenkins was 63% negligent and that Wolf was 27% negligent.[2] Jenkins filed a post-trial motion alleging that the trial court erred in failing to instruct the jury that Wolf was negligent *per se* because he violated 75 Pa.C.S.A. § 3112 when he struck Jenkins in a crosswalk. The trial court denied the motion.

¶ 4 Jenkins asserts that the evidence presented at trial demonstrated that Wolf violated 75 Pa.C.S.A. § 3112(a)(1)(i) when he failed to yield the right of way to her, a pedestrian, when she attempted to cross the street. Jenkins claims that Wolf's violation of this statute made him negligent *per se*, and that the court erred in refusing to charge the jury on negligence *per se*.[3]

¶ 5 Section 3112(a)(1)(i) states:

---

1. Jenkins initially appealed from the May 17, 2005 order that denied her post-trial motion. However, after filing her notice of appeal, judgment was entered. Accordingly, we deem her appeal filed from the judgment. *See* Pa.R.A.P. 905(a).

2. The jury's apportionment of the negligence attributable to Jenkins and Wolf totaled 90%.

3. We will reverse for an abuse of discretion or error of law controlling the outcome of the case. Error in a charge is sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. A charge will be found adequate unless "the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error." *Stewart v. Motts*, 539 Pa. 596, 654 A.2d 535, 540 (1995). A reviewing court will not grant a new trial on the

§ 3112. Traffic-control signals

(a) GENERAL RULE.—Whenever traffic is controlled by traffic-control signals exhibiting different colored lights, or colored lighted arrows, successively one at a time or in combination, only the colors green, red and yellow shall be used, except for special pedestrian signals carrying a word legend, and the lights shall indicate and apply to drivers of vehicles and pedestrians as follows:

(1) GREEN INDICATION.—

(i) Vehicular traffic facing a circular green signal may proceed straight through or turn right or left unless a sign at such place prohibits either such *turn except that vehicular traffic, including vehicles turning right or left, shall yield the right-of-way to other vehicles and to pedestrians lawfully within the intersection or an adjacent crosswalk at the time the signal is exhibited.*

75 Pa.C.S.A. § 3112(a)(1)(i).

¶ 6 At trial, Jenkins testified that she was at the intersection of Kensington Avenue and Allegheny Avenue in Philadelphia waiting for the light to turn green so she could cross to the northeast side of Allegheny Avenue. (N.T. Jury Trial, 1/25/05, at 5). When the light turned green, she looked to the left, saw that no cars were coming, and stepped onto the street. (*Id.* at 6). She was then struck by the passenger side view mirror on the defendant's sport utility vehicle. (*Id.* at 6).

¶ 7 Police Officer Greg Cosena, who was called to the scene after the accident, testified that his diagram of the scene portrayed Jenkins in the crosswalk (*Id.* at 28); however, when he arrived at the scene,

Jenkins was back on the sidewalk. (*Id.* at 30). Defendant Wolf's testimony indicated that Jenkins was not in the crosswalk when the impact occurred. (N.T. Jury Trial, 1/26/05, at 11–12).

¶ 8 Following the charge to the jury, Jenkins' counsel objected and requested a charge on negligence *per se.* The following exchange took place:

Mr. Holland: I would like a charge, your Honor, and I submitted for negligence *per se,* violation of the statute.

Mr. McNulty: I would leave it alone because there is conflicting evidence as to whether she was in the crosswalk. I don't have any objection, your Honor. I think everything has been covered for both sides.

\* \* \* \*

Mr. Holland: The fact that there is conflicting evidence on whether the defendant violated the statute is not the issue. The plaintiff is entitled to that charge, your Honor. It's been pled. It's an entitlement. I would suggest that you exercise your discretion in granting the request. . . .

\* \* \* \*

Mr. Holland: Just so I'm clear, why is it that negligence *per se* is denied?

The Court: I don't think it is an issue in this case. . . . I've ruled.

(*Id.* at 48–51).

¶ 9 Mr. Holland asked for a sidebar, which was denied, and then moved for a mistrial, which was also denied. (*Id.* at 53). After the verdict was read, Mr. Hol-

ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental. In reviewing a trial court's charge to the jury, we must not take the challenged words or passage out of con-

text of the whole of the charge, but must look to the charge in its entirety. *Raskin v. Ford Motor Co.,* 837 A.2d 518, 522 (Pa.Super.2003).

land reiterated his request for a mistrial and stated for the record that "the jury was rushed, because they obviously added up a number that's 90 percent." (*Id.* at 57).

¶ 10 After the jury was excused, the trial judge made the following statement on the record:

The Court: Now I think I can address your concerns. I charged the jury on what I believed was the appropriate law in this case, after which I invited both you and defense counsel into the robing room. You raised two issues in this matter: One concerned a motor vehicle statute and other was your feeling that my voice dropped off when I charged the jury concerning pain and suffering, loss of life's pleasure, embarrassment and humiliation, and that was all that was raised in the back and I came out and I denied your first request about the motor vehicle code. Secondly, I did accept your request concerning the second issue and I readdressed the jury on it.

(*Id.* at 58–59).

¶ 11 In her post-trial motions, Jenkins raised one issue: the court's refusal to charge on negligence *per se* in light of the fact that plaintiff was within the pedestrian crosswalk at the time the defendant's vehicle struck her. In its opinion, the trial court stated that even where a defendant is negligent *per se*, the allocation of negligence between plaintiff and defendant would still be for the jury. Trial Court Opinion, 9/30/05, at 1. This is a true statement. However, in this case, the jury was never told that *if* Jenkins was in the crosswalk, Wolf was negligent as a matter of law. Therefore, these facts required the trial court to instruct the jury that a pedestrian in a crosswalk has the right of way over a turning driver.

¶ 12 In closing argument, Wolf's counsel said the following:

—the question here is do they both share some responsibility? And I ask you to consider that. Should my client have seen Miss Jenkins? I have to be honest with you, he probably should have. Should Miss Jenkins have seen my client's vehicle making a turn? Probably should have.

N.T. 1/26/05, p. 19. Without a charge that Wolf is negligent *per se* for not yielding the right of way to a pedestrian in a crosswalk, the jury was left with the impression that each party here had the same obligation to look for the other, which is *not* the law when a car is turning right and a pedestrian is in a crosswalk. *See Meyer v. Union R. Co.*, 865 A.2d 857 (Pa.Super.2004) (trial court should charge on a point of law when there is some factual support in the record for the charge). This was not a dart-out case, and therefore Jenkins, crossing in the crosswalk at an intersection, had the superior right of way. *See* 75 Pa.C.S. § 3542. Even though the determination that a party has been negligent *per se* does not foreclose the jury from considering the comparative negligence of both parties, had the jury been instructed that Wolf had a duty when proceeding through a green light to yield the right of way to a pedestrian lawfully within the intersection or an adjacent crosswalk, the allocation of negligence may have been different.

¶ 13 Wolf argues that Jenkins testified that she was not in the crosswalk. This is a mischaracterization of the record. Jenkins testified on cross-examination as follows:

A: *I was on the crosswalk.* See that white there? The gentleman is blocking the end of the crosswalk. *I would say I was there, on the crosswalk* (indicating.)

N.T. Jury Trial, 1/25/05, at 34 (emphasis added). On redirect, Jenkins clarified:

Q: Let me look at that one photograph that Mr. McNulty had you looking at. What was this line drawn for the description of a puddle?

A: *No, this is where I was standing in the crosswalk.*

Q: And you could see the crosswalk itself even though there was snow and a puddle nearer to the curb?

A: Yes.

Q: And it's your recollection that you were in the crosswalk?

A: *Yes, I was on the crosswalk.*

Q: And you were on the—I'm not real good with my northeasts and northwests. You were on the . . .

A; Southeast.

Q: The right-hand side of the crosswalk. Is that where you recollect[ ] you were?

A: *No, I was in the crosswalk, left.* This is the crosswalk. See these white lines.

\* \* \*

Q: This is left.

A: Yes.

Q: Why did you draw the line to the right?

A: *I was in the crosswalk.* See this is on an angle.

Q: But unfortunately we didn't blow up the pictures for the jury so I'm trying to have you describe which side of the crosswalk.

A: Oh, the right side. There was a lot of white there, snow.

Q: And you were within the crosswalk?

A: Yes.

*Id.* at 34, 38–40 (emphasis added).

■ ¶ 14 Jenkins testified that she was "on" the crosswalk, and she testified that she was "in" the crosswalk. Wolf argues that there is a distinction. Even if there is, it makes no difference here. Jenkins plainly uses the terms interchangeably. Further, whether she was inside the white lines of the crosswalk, or on one of the white lines of the crosswalk, the protection afforded pedestrians does not end at the inside of the lines but includes the lines of the identified path. The lines define the edges of the crosswalk area. *See* 34 Pa. Code § 60.1.

■ ¶ 15 The charge that was requested and refused was that it is negligence *per se* not to yield to a pedestrian in the crosswalk. Even if there was disputed testimony as to whether Jenkins was in or out of the crosswalk, it was error not to instruct the jury that *if they believed Jenkins was in the crosswalk,* Wolf was negligent *per se.* This was vital to the facts and the issue in this case. The court's omission of the charge was fundamental error and resulted in an inaccurate description of the relative duties of care. *Raskin, supra; see also Angelo v. Diamontoni,* 871 A.2d 1276 (Pa.Super.2005). We therefore reverse and remand for new trial.

¶ 16 Judgment reversed. Case remanded for new trial.